THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DORIS LOUISE GUNN      PLAINTIFF

VS.      CAUSE NO. 1:20-CV-162-SA-DAS

ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES      DEFENDANT

ORDER AND MEMORANDUM OPINION

On July 27, 2020, Shelia Gunn, on behalf of the named Plaintiff, Doris Louise Gunn, proceeding *pro se*, filed a Complaint [1] commencing this action.[1] The Complaint [1] names Alex M. Azar, in his official capacity as the Secretary of the United States Department of Health and Human Services, as the sole defendant. The Complaint [1] alleges that Doris Louise Gunn was subjected to abuse while under the care of Camellia Hospice, a private healthcare provider, and that said abuse resulted in her death. On October 19, 2020, the Defendant, filed a Motion to Dismiss [9] for lack of jurisdiction and for failure to state a claim upon which relief can be granted. The Court is prepared to rule.

*Relevant Background*

The Complaint [1] alleges that Doris Louise Gunn was at one time living with and under the care of Shelia Gunn and required a heightened level of care due to her age and health conditions. However, she was eventually placed in several different hospice care facilities, one of which was Camellia Hospice, where she ultimately died. Gunn alleges that the medical records

---

[1] Although not specifically stated, the Court construes the Complaint as an attempt by Shelia Gunn to commence an action as the wrongful death beneficiary of Doris Louise Gunn.

"state [sic] a repeated continuous pattern of abuse and neglect." [1] at p. 5. The Complaint [1] alleges that "Camellia Healthcare failed to report these criminal acts of abuse and neglect…" *Id*.

Procedurally, this matter passed through several administrative channels before Gunn filed her Complaint [1] in this Court. Initially, Shelia Gunn filed a quality-of-care complaint with the Quality Improvement Organization ("QIO"), an entity under contract to assist in the administration of the Medicare program. One of QIO's functions is to review complaints from Medicare recipients about care that they receive. *See* 42 U.S.C. § 1320c-3(a)(14). This course of action was taken by Shelia Gunn, presumably because Doris Louise Gunn was a Medicare recipient.

Prior to conducting its review, the QIO sent two letters (dated June 13, 2017 and June 20, 2017 respectively) to Gunn, clarifying the scope of the reviews that the QIO undertakes as well as listing certain concerns that it could not address. *See* [8], Ex. 1. Subsequently, a review of the quality-of-care complaint was conducted, and a report was issued on July 6, 2017. The report indicated that the care received by Doris Louise Gunn from Camellia Hospice "did meet all applicable professionally recognized standards of health care." [8], Ex. 2 at p. 5. The report contained a provision advising that a reconsideration could be requested. After Sheila Gunn made such a request, the QIO issued a second report on July 18, 2017. The reconsideration report contained identical language and stated that the care received by Doris Louise Gunn from Camellia Hospice "did meet all applicable professionally recognized standards of health care." [8], Ex. 3 at p. 4. The reconsideration report also advised that the QIO's decision contained therein would be "the final decision on this matter, according to 42 CFR 476.140(b). There is no right to further reconsideration following the issuance of the QIO's final decision." [8], Ex. 3 at p. 5.

Subsequently, Shelia Gunn requested a hearing with an ALJ in the Office of Medicare Hearings and Appeals ("OMHA"). The OMHA is the forum that hears appeals relevant to denials

2

of claims for *Medicare payment*.[2] On November 1, 2018, the ALJ issued an Order of Dismissal pertinent to the request and noted that there was no further right to appeal the QIO decision and that OMHA did not have jurisdiction to hear appeals on matters related to quality of care. *See* [1] at p. 48. Thereafter, Shelia Gunn filed an appeal with the Medicare Appeals Council, the final agency authority for appeals denied by OMHA concerning denials of claims for *Medicare payment*. In a letter issued on June 25, 2020, the Medicare Appeals Council issued a dismissal. *See* [8], Ex. 5. The Medicare Appeals Council found that it did not have authority or jurisdiction to address a QIO decision related to beneficiary complaints regarding quality of care. *Id*. Accompanying that dismissal was a letter from the Medicare Appeals Council which in pertinent part provides that "Section 1869(b) of the Social Security Act may confer a right to judicial review of the Council's order in Federal district court. . . To request judicial review, you may file a complaint in the United States District Court[.]" [1] at p. 9. Additionally, the letter advised that such a complaint should name the Secretary of Health and Human Services ("HHS") as the defendant. *Id*. at p. 10. However, the letter also stated that judicial review "is available only if the amount remaining in controversy meets the minimum threshold. *See* 42 U.S.C S 1395ff(b)(1)(E)." *Id*. at p. 9.

In its Motion to Dismiss [8], the Defendant contends that the Court lacks subject matter jurisdiction and that the Plaintiff has not stated a claim upon which relief can be granted. Additionally, the Defendant seeks dismissal on the grounds that the United States has not waived sovereign immunity to allow damages against HHS for money damages.

---

[2] "OMHA hears claims related to whether an item or service is covered and payable by Medicare. OMHA does not have jurisdiction to hear appeals of quality of care complaints." [11], Ex. 2 at p. 48.

*Legal Standard*

Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenge the district court's subject matter jurisdiction to hear a case. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). If a Rule 12(b)(1) motion is filed simultaneously with other motions under Rule 12, the court should consider the Rule 12(b)(1) jurisdictional attack prior to ruling on any attack on the merits. *Id*. As the party asserting jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. Additionally, "[i]t is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Motions made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure test the legal viability of a complaint. A court reviewing such a motion must afford "the assumption that all of the complaint's allegations are true," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 292 (2007), and determine whether the averments comprise a "plausible" right to recovery. *Id*. Additionally, the Court must construe the well-plead factual allegations in the complaint in the light most favorable to the plaintiff. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be

4

granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face," *Id*. at 570.

Lastly, the Court notes that it must consider the Plaintiff's suit in light of her status as *pro se* litigants. Their complaint is therefore "held to less stringent standards than formal pleadings drafted by lawyers." *Cardona v. Taylor*, 828 F. App'x 198, 200 (5th Cir. 2020) (quoting *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002)) (citation omitted); *see also Books A Million, Inc.*, 296 F.3d at 378.

*Analysis*

As previously noted, motions to dismiss filed pursuant to Rule 12(b)(1) attacking the subject matter jurisdiction of a case should be ruled on prior to addressing the attack on the merits pursuant to Rule 12(b)(6). *See Ramming*, 281 F.3d at 161. The Court will therefore first address whether it has jurisdiction.

Turning to the Plaintiff's asserted basis for jurisdiction, the Court notes that she relies solely on the June 25, 2020 letter from the Medicare Appeals Council advising that she possessed a "right to judicial review" and should bring an action in the District Court in which she resides and to name the Secretary of Health and Human Services as the defendant. *See* [1] at p. 9-10. Thus, her Complaint [1] alleges jurisdiction on the basis of suing a U.S. Government Defendant.

That letter also stated that "[j]udicial review is available only if the amount remaining in controversy meets the minimum threshold. *See* 42 U.S.C. § 1395ff(b)(1)(E)." In examining what the amount in controversy is and what it is derived from, the Secretary of Health and Human Services publishes the amount in controversy requirements in the Federal Register annually as it relates to Medicare claims eligible for judicial review. *See* 84 FR 53444-01; *see also* 42 C.F.R. § 405.1006(b)(2). A party must meet the amount in controversy requirement at the time it requests

5

judicial review or the Court will not have jurisdiction. *See* 42 U.S.C. § 1395ff(b)(1)(E); *see also* 84 FR 53444-01 (A); *see also* 42 C.F.R. § 405.1006(c). The Medicare Appeals Council letter specified that for Calendar year 2020, when the Plaintiff filed this action seeking judicial review, the amount in controversy requirement is $1,670. *See* [1] at p. 9; *see also* 84 FR 53444-01(C) (published federal regulation with chart enumerating amount in controversy minimum for calendar year 2020, the year that Plaintiff filed this action seeking judicial review). In relevant part, Federal Regulations set forth how the amount in controversy is calculated:

> The amount remaining in controversy is computed as the actual amount charged the individual for the items and services in the disputed claim, reduced by—(i) Any Medicare payments already made or awarded for the items or services; and (ii) Any deductible and/or coinsurance amounts that may be collected for the items or services.

42 C.F.R. § 405.1006(d)(1)(i-ii).

Thus, the amount in controversy is, in layman's terms, an amount that should have been, but was not, paid *on a Medicare beneficiary's claims for medical services rendered*. It is important to point out that "[a] beneficiary may seek judicial review of an unsatisfactory determination regarding their Medicare benefits…" *Glassman v. Azar*, 2019 WL 2917990, at *1 (E.D. Cal. July 8, 2019) (citing 42 U.S.C. § 1395ff(b)(2)(C); 42 C.F.R. § 405.1136). However, the Plaintiff is not seeking judicial review of anything related to benefits. Instead, she is seeking monetary damages for alleged injuries inflicted by a private healthcare provider. In other words, this is not a case that alleges a discrepancy in benefits paid relative to an item or service covered by Gunn's Medicare plan. Although the Plaintiff's basis for alleging jurisdiction is that the Defendant is a U.S. Government Defendant, judicial review is not warranted because the Court lacks jurisdiction to hear these claims as no amount in controversy exists pursuant to the relevant statutes and regulations discussed above. "Judicial review is available *only if* the amount in controversy meets

6

the minimum threshold." [1] at p. 9 (emphasis added); *see also* 42 U.S.C. § 1395ff(b)(1)(E); *see also* 84 FR 53444-01(A).

The Court emphasizes that the law of Medicare provides for exclusive remedies that a recipient or beneficiary may seek against the Medicare program. *See* 42 U.S.C.A. § 1395ff. These relate to a beneficiary's rights to appeal the denial of a claim for Medicare payment for a healthcare service. *See Id*. And, in circumstances where judicial review is warranted, it is conducted pursuant to the Social Security Act's judicial review provision at 18 U.S.C. § 405 (g). *See* 42 U.S.C. $ 1395ff(b)(1) (incorporating section 405(g)); 1395cc(h)(1)). However, again, even putting aside for the moment the amount in controversy requirement, since this case does not involve anything related to Medicare payment, the Plaintiff's prayer for relief undoubtedly falls outside of the purview of exclusive remedies provided for in the law of Medicare because they do not relate to Gunn's benefits.

"The burden of proving jurisdictional facts rests on the plaintiff[.]" *Anderson v. Stoffle*, 339 F.2d 214, 214 (5th Cir. 1964). For the reasons set forth above, the Court finds that the Plaintiff has not met her burden of establishing this Court's jurisdiction.

Lastly, the Court acknowledges its obligation to consider the Plaintiff's suit in light of her status as a *pro se* litigant. Her complaint is therefore "held to less stringent standards than formal pleadings drafted by lawyers." *Cardona*, 828 F. App'x at 200 (quoting *Calhoun*, 312 F.3d at 733) (citation omitted); *see also Books A Million, Inc.*, 296 F.3d at 378. Nonetheless, despite the Court acknowledging its duty to construe a *pro se* plaintiff's allegations liberally, the Court unequivocally finds that it lacks jurisdiction. *See Carpenter v. Redmon Funeral Home*, 2018 WL 3966983, at *2 (N.D. Miss. July 18, 2018) (holding that despite the Court construing a *pro se* litigant's allegations liberally, the burden is still with the plaintiff to properly allege jurisdiction).

7

*Conclusion*

For the reasons set forth above, the Defendant's Motion to Dismiss [8] is GRANTED. The Plaintiff's claims are dismissed *with prejudice*. This CASE is CLOSED.

SO ORDERED this, the 17th day of August, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE